UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

IOANNIS NAKOULAS, *on behalf of himself and all other persons similarly situated*,

                              Plaintiff,

                -against-

VICTOR EBADI, *et al.*,

                              Defendants.

------------------------------------------------------------X

**ORDER**
20 CV 678 (CLP)

**POLLAK**, United States Magistrate Judge:

        On February 6, 2020, plaintiff Ioannis Nakoulas ("Nakoulas") filed a complaint against defendants Victor Ebadi, The Sizzling Wok, Inc., Pokebowl Station, Inc., Pokeworks NY2 LLC & Pokeworks NY3 LLC, Kureiji, Inc., "XYZ Corp," and "John Doe," alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., the New York Labor Law ("NYLL") §§ 190 et seq. and 650, et seq., and the New York Codes, Rules and Regulations, Title 12, §§ 146-2.4. (Compl.[1]) On January 19, 2021, plaintiff Nakoulas filed a notice of voluntary dismissal without prejudice as to defendants Pokebowl Station, Inc., d/b/a Pokebowl, Pokeworks NY2 LLC & Pokeworks NY3, d/b/a Pokeworks, Kureiji, Inc., d/b/a Kureji Poke Sushi, "XYZ Corp.," d/b/a Uptown Poke, and John Doe, leaving Victor Ebadi and The Sizzling Work as the sole defendants in this action (collectively, "defendants"). (ECF Nos. 16, 20). Plaintiff alleges that defendants "failed to pay minimum wage, overtime, and for hours worked in general." (Pls.' Ltr.[2] at 2).

---

[1] Citations to "Compl." refer to the Complaint filed on February 6, 2020. (ECF No. 1)
[2] Citations to "Pl.'s Ltr." refer to plaintiff's letter motion for settlement approval filed on September 15, 2022. (ECF No. 35).

1

The parties informed the Court that they had settled this matter on May 6, 2022. (ECF No. 30). On September 15, 2022, the plaintiff, on behalf of both parties, filed a joint motion for settlement approval. (ECF No. 35). On October 27, 2022, this Court held a fairness hearing on the motion, pursuant to Cheeks v. Freeport Pancake House, 796 F.3d 199 (2d Cir. 2015), and the parties submitted a fully executed settlement agreement ("the Agreement"). (ECF No. 38). On November 10, 2022, the parties submitted additional documentation supporting plaintiff's counsel's claim for costs. (ECF No. 39). On December 12, 2022, the parties submitted their consent to Magistrate Judge jurisdiction, which the district court granted on December 13, 2022. (See ECF Nos. 40, 41).

On January 19, 2023, the plaintiff, on behalf of both parties, filed another joint motion for settlement approval, indicating they had made a modification to the Agreement. (ECF No. 42). Paragraph 2(d) or Section 4 of the Agreement initially indicated that any litigation to enforce the Agreement "shall be conducted in the US District Court – Southern District of New York." (See ECF No. 38). The parties now represent that the reference to the "Southern District of New York" was made "erroneously" and "that their intention was that any disputes or enforcement arising out of the settlement agreement shall be venued in the Eastern District of New York with this court retaining jurisdiction for the same." (ECF No. 42).

For the reasons set forth in this Order, the Court approves the parties' Agreement as modified as fair and reasonable and approves plaintiff's request for attorney's fees. Although the Complaint was filed as a putative collective action, no certification had been sought or granted; therefore, the matter is being settled as to plaintiff Nakoulas only.

2

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that together the defendants owned and operated a sushi restaurant, located at 2421 Coney Island Ave, Brooklyn, New York 11223. (Compl. ¶¶ 6, 26, 34). Plaintiff alleges that the defendants were engaged in commerce within the meaning of the FLSA, constituted employers, and annually had a gross volume of sales of at least $500,000. (Id. ¶¶ 7–8, 26–27).

Plaintiff Nakoulas was employed by defendants as a sushi chef. (Id. ¶¶ 5, 36). He estimates that he only worked at The Sizzling Wok for less than one month. (Pl.'s Ltr. at 3). During his employment, plaintiff alleges that he generally worked six days a week for eleven hours per day. (Compl. ¶ 38). Plaintiff alleged that he was not paid an overtime rate for his hours worked in excess of forty hours per week, nor did he receive spread-of-hours pay when he worked more than ten hours in a day. (Id. ¶¶ 39–40).[3] Among other problematic workplace practices complained of, plaintiff Nakoulas alleged that his pay fell below the statutory and state minimum wages and that he never received a wage notice or statement. (Id. ¶¶ 44–45, 48, 52).

On September 15, 2022, the parties submitted their first motion for settlement approval, along with a settlement agreement and a retainer agreement. (ECF No. 35). On November 10, 2022, the plaintiff submitted invoices for his costs. (ECF No. 39). The parties propose to settle all of plaintiff's claims for a total of $4,000. (Pls.' Ltr. at 3; Agr.[4] ¶ 2(a)). According to the terms of the Agreement, plaintiff Nakoulas will receive $1,965.02 and plaintiff's counsel will

---

[3] According to the Complaint, plaintiff was employed by all the originally named defendants from September 2017 until September 2018. (Compl. ¶ 35). From the beginning of his employment until April 2018, plaintiff was paid $520 per week; and from May 2018 until the end of his employment, plaintiff was paid $400 per week, with the exception of the last five weeks of his employment, when plaintiff claims he was not paid at all. (Id. ¶¶ 41–43). Plaintiff's Complaint alleges that he worked for all of the originally named defendants at various times throughout the year of employment, but does not allege specifically when plaintiff worked at Sizzling Wok and therefore it is not clear what his pay was while at Sizzling Wok.

[4] Citations to "Agr." refer to the "Settlement Agreement and General Release" as executed and filed on September 15, 2022, and as modified by the parties' letter on January 19, 2023. (ECF Nos. 38, 42).

3

receive $982.50 in fees and $1,052.47 in costs.[5] (Pls.' Ltr. at 3; Agr. ¶ 2(a)). As part of the consideration supporting the Agreement, the parties agree to release one another from any and all claims arising out of plaintiff's employment. (Agr. ¶¶ 2(f)-(g)).

DISCUSSION

I.   Legal Standards

In determining whether to approve an FLSA settlement, courts consider whether the agreement "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" Le v. Sita Info. Networking Computing USA, Inc., No. 07 CV 86, 2008 WL 9398950, at *1 (E.D.N.Y. June 12, 2008) (alteration in original) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982) (holding that, where an FLSA settlement is a reasonable compromise, the settlement should be approved to "promote the policy of encouraging settlement of litigation"). Courts have identified several factors to consider when determining whether a proposed settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion.

Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting Medley v. American Cancer Soc., No. 10 CV 3214, 2010 WL 3000028, at *1 (S.D.N.Y July 23, 2010)); see also Cohetero v. Stone & Tile, Inc., No. 16 CV 4420, 2018 WL 565717, at *6 (E.D.N.Y. Jan. 25, 2018) (endorsing the factors from Wolinsky).

---

[5] Although one cent remains unaccounted for, the Court assumes plaintiff Nakoulas will be credited the one cent.

4

"When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." Fisher v. SD Prot. Inc., 948 F.3d 593, 606 (2d Cir. 2020) (citing Evans v. Jeff D., 475 U.S. 717, 727 (1986)).  "[E]ven though a district court has a duty to review an FLSA settlement for reasonableness to prevent any potential abuse, this does not grant the court authority to rewrite contract provisions it finds objectionable." Id. at 606.  Rather, if the court finds one or more provisions of an FLSA settlement agreement to be unreasonable, the Court must reject the proposed settlement. Id. at 605.

II.     Settlement Terms

The Court finds that the terms of the Agreement are fair and reasonable.  The Court notes that the Agreement, as filed in executed form on October 27, 2022, and as modified by letter on January 19, 2023, does not contain any confidentiality clauses, non-employment clauses, or non-disparagement clauses that do not contain a carve-out for truthful statements, all of which have previously been rejected by courts in this Circuit.  See Ortiz v. My Belly's Playlist LLC, 283 F. Supp. 3d 125, 126 (S.D.N.Y. 2017) (holding that a settlement clause in which plaintiffs agree to never seek re-employment with defendant contravenes the FLSA); Lopez v. 41-06 Bell Blvd Bakery LLC, No. 15 CV 6953, 2016 WL 6156199, at *2 (E.D.N.Y. Oct. 3, 2016) (explaining that a confidentiality clause is impermissible) (collecting cases), report and recommendation adopted, 2016 WL 6208481 (E.D.N.Y. Oct. 21, 2016);  Martinez v. Gulluoglu LLC, No. 15 CV 2727, 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016) (holding that for a non-disparagement clause to be permissible in an FLSA settlement agreement, "it must include a carve-out for

truthful statements about plaintiffs' experience litigating their case"). Specific terms are discussed in turn below.

        A.    Settlement Amount

The total proposed settlement amount is $4,000. (Pls.' Ltr. at 3). Plaintiff Nakoulas will receive $1,965.02 under the Agreement. (Id.) Plaintiff calculated his total estimated damages to be $4,000. (Id.) Both plaintiff and defendant seek to avoid the expense and time associated with pursuing this matter to trial. (Id.) Weighing the settlement amount agreed to here against the inherent risks and burdens that plaintiff would face in pursuing her claims, and seeing no issues regarding potential coercion, fraud, or collusion in this case, the Court finds that the settlement amount reached is a fair and reasonable compromise. See Wolinsky v. Scholastic Inc., 900 F. Supp. 2d at 335.

        B.    Scope of the Release

According to the Agreement, plaintiff and his related parties, agree to release defendants and their related parties from any and all claims arising out of plaintiff's employment and compensation through the date of the Agreement. (Agr. ¶ 2(f)). Similarly, defendants and their related parties will release plaintiff and his related parties from any and all claims related to wages arising out of plaintiff's employment. (Id. ¶ 2(g)).

Some courts in this Circuit will approve general release terms that are mutual and bind all parties equally. See, e.g., Guan v. Long Island Bus. Inst., No. 15 CV 2215, 2020 WL 1289517, at *3 (E.D.N.Y. Mar. 18, 2020) (approving an FLSA settlement with a broad release that was mutual as fair and reasonable in light of the rest of the settlement agreement); see also Burgos v. Northeast Logistics, Inc., No. 15 CV 6840, 2018 WL 2376481, at *4 (E.D.N.Y. Apr. 26, 2018) (explaining "when general releases are reciprocal, courts in this Circuit have been more

6

tolerant"), report and recommendation adopted, 2018 WL 2376300 (E.D.N.Y. May 24, 2018). Two factors that counsel courts to approve of general releases that are reciprocal are whether the action is a non-class action and whether plaintiffs no longer work for defendants. See Burgos v. Northeast Logistics, Inc., 2018 WL 2376481, at *4 (citing Lopez v. Polo-St. Ann. L.P., 176 F. Supp. 3d, 340, 344 (S.D.N.Y. 2016)). The release term should also be "symmetrical" with respect to the groups waiving their respective rights. Id. at *5–6 (citing cases).

This action, though filed as a putative collective action, is no longer proceeding as such and plaintiff no longer works for defendants. The release is not only "symmetrical" but it also releases only those claims that can arise out of plaintiff's employment. Therefore, this Court finds that the mutual general release term is fair and reasonable in this case.

      C.     Jurisdiction

The Court recognizes that the parties wish to have the Court retain jurisdiction to enforce Agreement. (Agr. ¶ 2(d); see also ECF No. 42). "The Second Circuit has explicitly held that a district court does not retain jurisdiction to enforce a settlement merely by placing its 'judicial imprimatur' on the parties' settlement, such as by approving the settlement agreement as fair and adequate." Melchor v. Eisen & Son Inc., No. 15 CV 113, 2016 WL 3443649, at *6 (S.D.N.Y. June 10, 2016) (citing cases). A court's approval of a settlement agreement under Cheeks is not sufficient alone as a basis for retaining federal jurisdiction over enforcement of that FLSA settlement agreement. Mao v. Mee Chi Corp., No. 15 CV 1799, 2016 WL 675432, at *1 (S.D.N.Y. Feb. 11, 2016) (holding there is no "suggestion in *Cheeks* that by mandating review of FLSA settlements, the Second Circuit Court of Appeals was creating federal jurisdiction over enforcement of all such agreements").

If the parties want this Court to retain jurisdiction for purposes of enforcing the Agreement, they should make it explicit in their stipulation of dismissal.

### D.     Attorney's Fees and Costs

According to the proposed settlement agreement, $982.50 of the settlement amount will go to plaintiff's counsel as counsel's fees and $1,052.47 of the settlement amount will go to counsel's costs. (Pls.' Ltr. at 3). The costs requested include the filing fee, costs for PACER activity, and costs associated with legal research. (See ECF No. 39). Courts often award costs that are "incidental and necessary to [plaintiff's] representation." Mitland Raleigh-Durham v. Myers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993). Plaintiff's counsel's fees reflect one third of the net settlement amount,[6] and plaintiff agreed to compensate counsel in the amount of one third of the net settlement amount in his retainer agreement. (Retainer Agreement, ECF No. 35-2). Counsel notes such fee awards are "commonly accepted . . . in this Circuit." (Pls.' Ltr. at 4 (quoting Calle v. Elite Specialty Coatings Plus, Inc., No. 13 CV 6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014))).

Courts must assess the reasonableness of plaintiffs' attorney's fees, regardless of whether the fee has been negotiated as part of the settlement amount. Beckert v. Rubinov, No. 15 CV 1951, 2015 WL 6503832, at *2 (S.D.N.Y. Oct. 27, 2015) (quoting Lliguichuzcha v. Cinema 60, LLC, 948 F. Supp. 2d. 362, 366 (S.D.N.Y. 2013)). The Second Circuit has set forth six factors to determine whether attorney's fees in FLSA settlements are reasonable: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d

---

[6] The net settlement amount is $ 2,947.53 and plaintiffs' counsel's fees are $982.50. The Court calculates that counsel seeks 33.33% of the net award.

Cir. 2000) (omission in original) (quoting In re Union Carbide Corp. Consumer Prods. Bus. Sec Litig., 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

In calculating attorney's fees, courts have used one of two methods: the "lodestar" method and the "percentage-of-recovery" method. See Allen v. Taylor, 795 F. App'x 79, 80 (2d Cir. 2020). When using the "lodestar" method, courts multiply the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546, 551–52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors, Cowan v. Ernest Codelia, P.C., 2001 WL 30501, at *7; see also Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999), and courts in this Circuit have applied a multiplier to the lodestar calculation. E.g., Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (holding "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases"); see also Velandia v. Serendipity 3, Inc., No. 16 CV 1799, 2018 WL 3418776, at *5 (S.D.N.Y. July 12, 2018) (finding a multiplier of 1.2 to be a "reasonable lodestar modifier").

Instead of using the lodestar method, courts may also employ the "percentage of the fund" method. See McDaniel v. County of Schenectady, 595 F.3d 411, 417–18 (2d Cir. 2010) (collecting cases). With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable. See Romero v. Westbury Jeep Chrysler Dodge, Inc., No. 15 CV 4145, 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016) (citing

9

cases). However, a one-third percentage may be "simply too great" in relation to the work performed. See Larrea v. FPC Coffees Realty Co., No. 15 CV 1515, 2017 WL 1857246, at *6 (S.D.N.Y. May 5, 2017) (declining to approve a one-third fee that would result in an 11.4 multiplier of the lodestar calculation).

In FLSA cases, regardless of the method used, "[t]he Court must . . . separately assess the reasonableness of plaintiff's attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined." Beckert v. Rubinov, 2015 WL 6503832, at *2 (omission in original) (quoting Lliguichuzcha v. Cinema 60, LLC, 948 F. Supp. 2d. 362, 366 (S.D.N.Y. 2013)). Here, plaintiff was represented by Zachary Kaplan and Patricia Lynch, associate attorneys at Sacco & Fillas, LLP. Both counsel bill at a rate of $350 per hour, so presumably their award using a lodestar calculation would be higher than the percentage of recovery method here, for which they will receive an award of $982.50. (Pls.' Ltr. at 4). Given that counsel was able to navigate a settlement successfully between experienced counsel, the Court finds the award of fees is reasonable.

The other Goldberger factors also weigh in favor of finding the award fair and reasonable: the risks of litigation are high, "FLSA claims typically involve complex mixed questions of fact and law," Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 743 (1981), and the public policy goal of encouraging attorneys to take on FLSA and NYLL actions that protect the wages of workers is served here. See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481 (S.D.N.Y. 2013). Thus, as plaintiff's counsel is requesting one-third of the settlement, a percentage typically found reasonable in this Circuit, and upon review of the parties' submissions and in consideration of the Goldberger factors set forth above, the Court approves the agreed-upon attorney's fees.

CONCLUSION

In this case, after holding a fairness hearing and reviewing the parties' submissions, the Court finds that the settlement reached is a fair and reasonable compromise of plaintiff's claims. The Court reached its determination after considering the amount received, the issues that might have limited recovery, and the fact that the parties engaged in arms'-length negotiations between experienced counsel. Cf. Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d at 355 (examining the factors courts consider when approving FLSA settlement agreements). The Court also finds that plaintiff's counsel's request for fees and costs is reasonable.

The parties are directed to file a stipulation of dismissal by **February 28, 2023.**

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**
Dated: February 13, 2023
Brooklyn, New York

*Cheryl L. Pollak*
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York